UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 1:21-cv-21740

FLOSPORTS, INC., a Delaware corporation,

        Plaintiff

v.

LOUD AND LIVE FITNESS, LLC,
a Florida limited liability company,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, FloSports, Inc. ("FloSports"), through counsel, hereby files this Complaint and Demand for Jury Trial against the defendant, Loud and Live Fitness, LLC ("Loud & Live").

**I.      INTRODUCTION**

1. Pursuant to a multi-year agreement, FloSports pays Loud & Live an annual, six-figure licensing fee in exchange for the exclusive rights to record, produce, and live stream Loud & Live's fitness competitions. With the duel aims of escaping the agreement early and extinguishing FloSports' contractually-negotiated right of first refusal, Loud & Live concocted a sham basis (*i.e.*, an alleged, "incurable material breach") to terminate the agreement. In truth, there has been no breach by FloSports, much less a material breach incapable of cure. Indeed, the cause for the stated breach was Loud & Live's failure to honor its contractual obligations.

2. Further undermining Loud & Live's claim of material breach is that the claim arose more than seven months *after* the alleged precipitating event and *after* Loud & Live executed an amendment expressly ratifying the parties' agreement. Loud & Live's wished-for termination is

baseless. Its actions give rise to significant legal damages, as well as the recovery of FloSports' attorneys' fees and costs.

## II.     PARTIES, JURISDICTION AND VENUE

**A.     The Parties**.

3.     FloSports is a Delaware corporation with headquarters at 979 Springdale Road, Suite 120, Austin, Texas 78702. Founded in 2006, FloSports is a venture-backed subscription video streaming service focused on traditionally underserved sports, offering live and on-demand access to hundreds of thousands of competition events across dozens of sport categories in the United States and abroad. (*See* https://www.flosports.tv/about/). FloSports streams events on its digital and social media pages, over-the-top media service and mobile applications. With a growing library of more than 300,000 hours of premium content including news, expert commentary, films, documentaries and more, FloSports has established itself as an innovative leader in sports streaming.

4.     Loud & Live is a Florida limited liability company with headquarters at 2301 Northwest 87th Avenue, 6th Floor, Miami, Florida 33172. Loud & Live is an entertainment, sports and marketing company, which touts itself as performing "at the intersection of music, sports, lifestyle and content development." (*See* https://www.loudlive.com/). Loud & Live either owns or possess rights to functional fitness festivals and competitions, including a number of CrossFit-sanctioned qualifying events.

**B.     Jurisdiction and Venue**.

5.     This Court possesses personal jurisdiction over Loud & Live, because, among other things: (a) Loud & Live is a Florida limited liability company with headquarters in Miami, Florida; (b) Loud & Live has actively, regularly, systematically and continuously conducted business in

the State of Florida; and (c) this lawsuit arises from Loud & Live's activities in the State of Florida, including the breaches of its contractual obligations.

6. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because at all pertinent times FloSports has been a citizen of Texas and Loud & Live has been a citizen of Florida, and the matter in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.

7. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because Loud & Live "resides" in this district, and a substantial part of the events giving rise to FloSports' claims occurred in this district. Also, FloSports has been injured in this district as a result of the Loud & Live's conduct.

8. Jurisdiction and venue are further proper in this Court pursuant to the terms of the disputed agreement, in which the parties agreed to submit to the jurisdiction of the state or federal courts located in the Southern District of Florida, and to bring any such dispute in Miami-Dade County, Florida.

9. All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived or otherwise executed.

### III. FACTUAL BACKGROUND

**A.  FloSports Had Been Producing and Distributing WZA Years Before Loud & Live's Acquisition of the Event**.

10. FloSports has been recording, producing and distributing content for the annual winter Wodapalooza festival ("WZA"), held in Miami, since 2014.

11. WZA is a CrossFit-sanctioned fitness competition,[1] which features athletes competing in approximately 40 workouts from rope climbing and barbell lifts to ring muscle ups.

---

[1] WZA's name derives from WOD (CrossFit for "Workout of the Day") and –"looza," a frequent festival suffix.

As an official qualifying event,[2] WZA's top performers qualify for the annual CrossFit Games, the "SuperBowl" of CrossFit.

12. FloSports involvement with WZA has coincided with the event's surge in popularity. Over the years, WZA has evolved from a one day fitness event to a four-day, inclusive, community-driven festival in which both adaptive athletes and abled athletes compete. As explained on its website, created in 2012 as a "grassroots 1-day fitness competition" with 145 athletes, WZA has "since established itself as the world's premier Functional Fitness Festival." (*See* https://wodapalooza.com/wza/).

13. WZA's spectators have grown from 7,000 spectators in 2015 to 30,000 spectators in 2018." (*Id.*).

14. After the 2018 WZA festival, WZA was purchased by Loud & Live.

15. The new owners' lack of experience in producing WZA and logistical foresight emerged in planning the WZA event scheduled for January 17-20, 2019. For example, less than five weeks before the event, Loud & Live requested that FloSports stream portions of the event for free. Despite the fact that it ran contrary to its business model, as well as being under no contractual obligation to do so, FloSports agreed to provide a limited window of free viewing on social media.

16. After the 2019 WZA festival, on March 15, 2019, Loud & Live exercised its right to opt out of the existing agreement with FloSports, professing that it no longer wished to have a pay wall separate prospective viewers from the broadcasts. Loud & Live expressed an intention to broadcast WZA as a free livestream.

17. Months after opting out, on July 17, 2019, Loud & Live changed course and

---

[2] WZA became an official qualifying event in 2019.

contacted FloSports, expressing an interest to keep an open dialogue about resuming a contractual relationship due to shifting circumstances.

18. On an August 19, 2019 conference call, Loud & Live expressed a renewed interest in having FloSports provide paywall content for future WZA events, as well as having FloSports record, produce and distribute four new annual CrossFit events: (i) the West Coast CrossFit Classic, (ii) Madrid CrossFit Championship, (iii) Granite Games and (iv) Mayan CrossFit Classic (collectively, with WZA, the "CrossFit Events").

**B.   Loud & Live and FloSports Execute a Multi-Year Agreement for Five Annual CrossFit Events, Which Includes a Right of First Refusal.**

19. On December 23, 2019, Loud & Live entered into a Media Rights Agreement. A partially redacted copy of the Media Rights Agreement is attached hereto as **Exhibit 1** ("Agreement").[3]

20. Pursuant to the Agreement, FloSports was granted the exclusive,[4] worldwide right to record, produce and distribute live streams (whether live or delayed) the CrossFit Events for the years 2020, 2021, and 2022. (*Id.*, ¶ 1). FloSports was to receive no less than five CrossFit Events to produce and distribute during each calendar year of the Agreement. (*See id.* Attachment C, ¶ (1)(xiii)).

21. In exchange for this broadcast right, FloSports agreed to produce the CrossFit Events, as well as pay an annual six-figure media rights fee. (*Id.*, ¶¶ 1-2).

22. Specifically, FloSports was to produce the CrossFit Events pursuant to production

---

[3] Given the sensitive commercial nature of media rights, the amounts have been redacted from Exhibit 1, as well as the amendment thereto. (*See* Exhibit 2).

[4] There are narrow exceptions to the exclusivity grant, including Loud & Live's right to distribute clips of the CrossFit events, after the expiration of the "live window," on Loud & Live's owned and operated websites and social media channels. (*See* Ex. 1, ¶ 1(a)).

standards and formats that, in *its* determination, would result in high-quality programs. (*Id.*, Attachment B, ¶ 4).

23. The Agreement contemplates the production and broadcast of the CrossFit Events through 2022, ending with the 2022 Mayan CrossFit Classic.

24. The term of the Agreement could, however, be modified by two events. First, either party could terminate the Agreement during the "Opt-Out Period," which begins "on the date of the last [CrossFit] Event in 2021 and ends on the date that is sixty (60) days immediately thereafter." (*Id.*, ¶ 5(b)).

25. Second, conversely, the Agreement could be extended if, "[d]uring the term of this Agreement and for a period of ninety (90) days after any termination or expiration of this Agreement ('ROFR' Term)," FloSports exercised its contractual right of first refusal to match any third-party offered received by Loud & Live. (*Id.*, ¶ 6).

26. Critically, the Agreement provides that "the Right of First Refusal shall not apply in the event that [Loud & Live] terminates this Agreement for an uncured material breach." (*Id.*). This limitation explains Loud & Live's true motivation.

**C.   Loud & Live Blocks FloSports from the Contractually-Required, Priority Camera Locations**.

27. A week after the execution of the Agreement, on December 30, 2019, FloSports emailed Loud & Live to start the planning process for the 2020 Events, including the 2020 WZA scheduled to start on February 20, 2020, less than 60 days after executing the Agreement.

28. The truncated production period necessitated expedited action. Given its experience in successfully producing the past five WZA events, FloSports anticipated that Loud & Live would heed FloSports' production directives, including its recommendations as to the preferred camera locations for capturing the most interesting competitive activity.

29. Further, pursuant to the Agreement, Loud & Live was contractually obligated to "procure and provide the FloSports production team … with ***priority camera locations*** and, where needed for desirable camera angles, platforms," even if these priority locations resulted in lost seats. (*Id.*, Attachment B, ¶ 5(d) (emphasis added)).

30. Preserving priority camera perspectives was a contractual imperative.

31. Starting, on February 17, 2020, three days before the 2020 WZA festival, FloSports producers expressed concerns regarding the manner in which Loud & Live had designed the venue. By way of example, optimal camera locations used in the past were unavailable due to a variety of reasons, including: Loud & Live's conversion of those locations into V.I.P. sections, and Loud & Live's expressed need to keep an entryway unobstructed for the athletes; significant traffic flows; and unsecured locations. Moreover, the main stage was configured in a manner that precluded the event's announcers from having the needed clear line of sight to provide color commentary.

32. Compounding matters, Loud & Live had not finalized the set-up for the venue, resulting in FloSports being forced to scramble to find optimal camera locations to replace those which Loud & Live eliminated.

33. FloSports was not only denied access to its optimal camera locations, but to its alternative selections, as well. After some discussion, Loud & Live staffers Ron Avellan ("Avellan") and Anamarie Rojas ("Rojas") directed FloSports to set its cameras on bleachers.

34. FloSports objected to Avellan's and Rojas' directive, noting that the high probability that cheering fans would shake the bleachers which, in turn, would shake the cameras and degrade the overall quality of the video imagery. FloSports' objections were overruled, despite Loud & Live contractual obligation to "procure and provide" FloSports with "***priority camera locations***." (*Id.*) (emphasis added).

35. On the first day of WZA 2020, Kristen Chandler ("Chandler"), a Loud & Live staffer, inquired as to why FloSports did not receive priority camera locations. FloSports informed Chandler that Loud & Live had informed FloSports that the priority camera locations were off limits. Chandler shared FloSports' belief that the cameras should have enjoyed location precedence.

36. Despite Chandler's concurrence, Loud & Live made no attempt to alter the camera positions during the remainder of the WZA festival.

37. Operating within the physical limitations imposed by Loud & Live at the 2020 WZA, FloSports performed its contractual duties with distinction.

**D.   Loud & Live Signs an Amendment to the Parties' Agreement *After* the 2020 WZA Event**.

38. The parties negotiated and agreed to modify the Agreement on February 3, 2020. The modified terms were confirmed, in writing, on February 4, 2020.

39. The next day, FloSports sent Loud & Live "Amendment No. 1," which was "effective as of February 5, 2020" (approximately two weeks before the 2020 WZA). (A partially redacted copy of Amendment No. 1, hereinafter the "Amendment" is attached hereto as **Exhibit 2**).

40. The Amendment increased the annual fees that FloSports was to pay Loud & Live. (*Id.*, ¶ 1).

41. The Amendment also obligated Loud & Live to provide "at least two commentators/play-by-play announcers" for future CrossFit Events. (*Id.*, ¶ 2).

42. Except as expressly provided in the Amendment, "all of the terms and provisions of the [ ] Agreement are and will remain in full force and effect and hereby ratified and confirmed by the Parties." (*Id.*).

43. Despite FloSports' requests that Loud & Live sign the Amendment on February 12, March 2, and March 10, 2020, Loud & Live did not sign the Amendment until March 10, 2020 – approximately two weeks *after* the 2020 WZA event.

44. In signing the Amendment, Loud & Live did not raise any concerns regarding the production of the 2020 WZA Event.

45. To the contrary, in signing the Amendment on March 10, 2020, Loud & Live expressly *ratified* the Agreement.

46. Moreover, during this same time, the parties were actively planning for the next event: the 2020 West Coast Classic, which was scheduled to occur in Del Mar, California, but ultimately postponed due to COVID-19. As of March of 2020, it was business as usual.

### E. In May 2020, Loud & Live Revealed its True Intent to Reclaim the Media Rights to the CrossFit Events.

47. Two months after ratifying the Agreement, two and a half months after the 2020 WZA event and two months after working with FloSports on the 2020 West Coast Classic, Loud & Live first professed concerns regarding the production of the 2020 WZA event.

48. In a May 21, 2020 email, Dylan Malitsy ("Malitsy"), Loud & Live's Vice President, wrote to FloSports providing in pertinent part:

> In preparation for next week's call, I wanted to pass along a document with some highline [sic] pertinent comments regarding our experience working together at WZA 2020.
>
> With that said, all of our events are cancelled until 2021.[5] Additionally, as mentioned by Matt [O'Keefe], being frank, *we are having trouble seeing a path forward together*. We hope we can use this time to talk through some of these points, and our best mutual options.

A true and correct copy of Maltisky's May 21, 2020 email, together with the accompanying exhibit, is attached hereto as **Exhibit 3** (the "May 21, 2020 Email") (emphasis added).

---

[5] These events were cancelled due to the COVID-19 pandemic.

49. The referenced attachment contained thirteen (13) curated samples of supposed consumer dissatisfaction raising a variety of complaints. Several individuals complained about shaky cameras – a direct, foreseeable and, in fact, foreseen consequence of Loud & Live's directive banishing the cameras from the primary camera locations, and relocating the cameras onto the unstable, shaky bleachers occupied by cheering fans. Other complaints related to FloSports' paywall, not production capacities.

50. Notably, the May 21, 2020 Email did not claim that FloSports breached either the Agreement or the Amendment (hereinafter, collectively the "Agreement" unless designated to the contrary).

51. Loud & Live also never claimed that the production of the 2020 WZA constitutes a material breach of the Agreement during the parties' follow-up conference call.

**F.    Loud & Live Issues a Sham Termination Notice and Breaches the Agreement.**

52. Instead, approximately five months later,[6] on October 15, 2020, Loud & Live sent a spurious termination notice to FloSports. A true and correct copy of the October 15, 2020 correspondence is attached hereto as **Exhibit 4** (the "Sham Termination Notice").

53. The Sham Termination Notice cites a single basis as alleged grounds for termination: the "extremely poor" quality of the WZA broadcast that allegedly precipitated "overwhelmingly negative feedback." The Sham Termination Notice states, in pertinent part:

> As [Loud & Live] has previously advised FloSports, via email correspondence on May 21, 2020 (which email was followed by a conference call between representatives of [Loud & Live] and FloSports) the quality of the FloSports 2020 Wodapalooza broadcast was extremely poor. The extremely poor quality of such broadcast is evidenced, in part, by the overwhelmingly negative feedback received by [Loud & Live] with respect to such broadcast. Exhibit A attached to this letter contains a sample of such negative feedback (which was previously provided to FloSports in the aforesaid May 21, 2020 email).

(*Id.*).

---

[6] During this five (5) month period, CrossFit went through a high-profile shake-up and was sold.

54. The Sham Termination Notice mischaracterizes the alleged production quality of the 2020 Wodapalooza as a "material breach of the Agreement" that is "entirely incapable of cure."

55. The Sham Termination Notice did not specify any of the purported "overwhelmingly negative feedback," and was ostensibly referring to the complaints raised by 13 of the 30,000 live stream viewers – ostensibly suggesting that the *dissatisfaction rate of 0.00043%* constitutes "overwhelmingly negative feedback."

56. The Sham Termination Notice fails to explain why Loud & Live – alleged to be incurably damaged after the February 2020 WZA – would execute the Amendment with FloSports on March 10, 2020, two weeks after FloSports allegedly inflicted incurable damage on Loud & Live.

57. The Sham Termination Notice also fails to articulate why Loud & Live waited more than seven months to terminate the Agreement.

**G.    FloSports Rejects Love & Live's Sham Termination**.

58. On December 30, 2020, FloSports rejected Loud & Live's Sham Termination Letter. A true and correct copy of FloSport's notice of rejection is attached hereto as **Exhibit 5** ("FloSports' Rejection Notice").

59. FloSports' Rejection Notice explicitly rejected Loud & Live's allegations that FloSports committed a breach; that any alleged breach was "material"; and that any alleged breach was "entirely incapable of cure."

60. FloSports' Rejection Notice identifies multiple deficiencies in Loud & Live's stated basis for terminating the Agreement, noting that:

   a. "most of the selected feedback relates to issues other than those relied upon for your purported termination";

   b. "curated 'feedback' from customers" in the form of "a select set of [13] social

> media posts are neither a basis for reaching conclusions about production quality, nor a basis for determining that any issues discussed were either 'material' or 'entirely incapable of cure'"; and
>
> c. FloSports had "experienced significant production challenges created by [Loud & Live]" where Loud & Live "imposed production restrictions that directly contravened [Loud & Live's ] obligations in section 5 ('Logistics') of Attachment B to our agreement."

(*Id.*).

61. FloSports' Rejection Notice also identified the obvious connections between Loud & Live's own conduct and the limited, negative customer feedback cited by Loud & Live:

> FloSports was repeatedly denied preferred and stable camera locations; it is interesting and relevant that several of your selected customer complaints relate directly to problems created by limitations wrongfully imposed upon FloSports by [Loud & Live] personnel.

(*Id.*).

62. FloSports' Rejection Notice also rejected the specious suggestion that the alleged production issues that incurred in connection with the WZA 2020 event were "incurable":

> As you may know, production issues in live event production are commonly considered and addressed in ordinary course post-event debriefings. Production improvements identified by promoters and media companies in these debriefings are routinely implemented. To the extent production issues might create a contractual breach, the custom and practice in the sports media industry suggests these are issues that partners are quite capable – rather than 'entirely incapable' – of curing.

(*Id.*).

63. FloSports' Rejection Notice declared that the Agreement "remains in full force and effect," and advised that FloSports "expects full performance of the Agreement" by Loud & Live.

(*Id.*).

**H.    Loud & Live Doubles Down on its Sham Termination Notice**.

64. Through counsel, Loud & Live responded to FloSports' rejection letter.  A true and correct copy of the January 6, 2021 letter from Holland & Knight is attached hereto as **Exhibit 6**

("Loud & Live's Reiteration Letter").

65. Loud & Live's Reiteration Letter parrots the prior contention contained in its Sham Termination Notice: that "the quality of the FloSports 2020 Wodapalooza broadcast was extremely poor"; "constituted a material breach of the Agreement"; and was "incapable of cure."

66. Loud & Live's Reiteration Letter further alleges, without proof, that "the [Loud & Live] and Wodapalooza brands were irreparably damaged."

67. Like the Sham Termination Notice, the Reiteration Letter fails to explain why Love & Loud – alleged to be "irreparably damaged" after the February 2020 WZA event – would execute the Amendment, two weeks after FloSports allegedly inflicted irreparable damage on Love & Loud.

68. The Reiteration Letter also failed to explain why Love & Loud – alleged to be "irreparably damaged" after the February 2020 WZA event – waited more than seven months to declare an alleged material breach.

I. **FloSports Issues A Compliance Demand Letter**.

69. On March 24, 2021, FloSports reiterated its rejection of Loud & Live's termination and repeated its expectancy of full compliance with the Agreement. A true and correct copy of FloSports March 24, 2021 letter to Loud & Live is attached hereto as **Exhibit 7** ("FloSports' Compliance Demand Letter").

70. FloSports' Compliance Demand Letter noted that, as of the date of the letter, Loud & Live was already out of compliance with its obligations to furnish the contractually-required twelve (12) week advance notice of contact information for the events scheduled in June 2021.

71. Loud & Live's refusal to provide FloSports with contractually-required information with contractually-indicated timeliness for performing pre-production and production of the

contractually-identified events is a material breach of the Agreement.

72. Loud & Live has no intention of providing this information, or working with FloSports. Instead, Loud & Live intends to produce and distribute the CrossFit Events without respecting FloSports' contractual rights.

73. The true impetus for Loud & Live's attempt to prematurely terminate the Agreement was to seek a better deal; maintain flexibility in the event that other opportunities presented themselves given the state of flux at CrossFit;[7] and extinguish FloSport's contractual right of first refusal.

## COUNT I
### (Breach of Contract)

74. FloSports re-alleges and reincorporates paragraphs 1 through 73.

75. The Agreement is a valid and enforceable contract between FloSports and Loud & Live.

76. The Amendment, which amended the Agreement in part, is a valid and enforceable contract between FloSports and Loud & Live.

77. At all material times, FloSports has satisfied all of its contractual obligations under the Agreement and the Amendment.

78. Loud & Live has materially breached the Agreement, as amended, by, among other things, prematurely terminating the Agreement; falsely claiming a breach; deeming this supposed breach to be material and incurable; terminating the Agreement in advance of the Opt-Out Period; wrongly attempting to extinguish FloSports' contractual right of first refusal; and preparing to produce several of the CrossFit Events without respecting FloSports' contractual rights.

---

[7] As referenced above, CrossFit was sold in July of 2020. Industry rumors suggest that, under new leadership, CrossFit may not continue to officially sanction events, such as WZA. There is similar speculation that Loud & Live needed to reclaim the media rights from FloSports in order to spearhead a new series that would compete with CrossFit.

79. Loud & Live has failed to and refuses to cure its breaches, refuses to perform, and continues to treat the Agreement as though it has been properly terminated.

80. As a direct and proximate result of Loud & Live's breaches of the Agreement, as amended, FloSports has incurred actual and substantial monetary damages and will continue to incur such damages in an amount to be determined at the final hearing in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, FloSports respectfully requests that the Court enter judgment in its favor and against Loud & Live for:

1. The actual and compensatory damages suffered by FloSports based on Loud & Live's wrongdoing in an amount to be established at trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate;

2. An award of its attorneys' fees and costs pursuant to the terms of the parties' Agreement;

3. For prejudgment interest according to law; and

4. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

FloSports respectfully demands a trial by jury on all claims and issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  May 6, 2021                                         Respectfully submitted,

**PRYOR CASHMAN LLP**
*Attorneys for FloSports*
201 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131
Telephone: (786) 582-3011
Facsimile:  (786) 582-3004


*s/ James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com